IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SCOTT MICHAEL HORSEMAN,

               Petitioner,

    v.

JAMIE MILLER,

               Respondent.

Case No. 2:23-cv-01453-HZ

OPINION AND ORDER

       Susan F. Wilk
       Assistant Federal Public Defender
       101 S.W. Main Street, Suite 1700
       Portland, Oregon 97204

               Attorney for Petitioner

       Dan Rayfield, Attorney General
       Daniel T. Toulson, Assistant Attorney General
       Department of Justice
       1162 Court Street NE
       Salem, Oregon 97310

               Attorneys for Respondent

HERNANDEZ, District Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 challenging the legality of several of his Washington County convictions dated August 12, 2014. For the reasons that follow, the Second Amended Petition for Writ of Habeas Corpus (#43) is denied.

## BACKGROUND

Petitioner came upon his 16-year-old male victim, G, at a church-associated café that provided food to individuals facing homelessness. Despite G telling Petitioner that he faced alcohol and drug addiction issues, the second time Petitioner encountered G, he offered to buy him alcohol. Even though G was "creeped out" by Petitioner, he nevertheless ultimately allowed him to purchase alcohol for him, and the two ended up behind a building where they engaged in sexual activity. Respondent's Exhibit 112, p. 34. This led to a pattern of sorts where Petitioner would provide G with alcohol or food, and the two would engage in sexual activity.

As the Oregon Court of Appeals would later find, Petitioner typically "induced G to masturbate in front of him as a prelude to, and in facilitation of, the physical sexual abuse that at least sometimes followed." Respondent's Exhibit 118, p. 15. "G described [Petitioner's] 'usual' conduct as . . . defendant started masturbating and asked G to do the same; he then watched G masturbating." *Id.* at 5. Petitioner would then proceed to sexually abuse the boy. As the Oregon Court of Appeals would later find, Petitioner "induced G to masturbate while he watched, often after giving G alcohol or bribing him with other items. Although G's acts were witnessed only by [Petitioner], the child still was subjected to the experience of being 'purchased' for the purpose of exposing his most intimate sexual activity to a much older man." Respondent's Exhibit 118, p. 15.

Based on the foregoing, the Washington County Grand Jury charged Petitioner with two counts of Sexual Abuse in the Third Degree, three counts of Sexual Abuse in the Second Degree,

and five counts of Using a Child in a Display of Sexually Explicit Conduct pursuant to ORS 163.670. Respondent's Exhibit 102. In the same Indictment, Petitioner was also charged with two additional counts of sexual abuse crimes involving another minor victim, T. Respondent's Exhibit 102. He was convicted of both charges involving T, Respondent's Exhibit 101, but does not challenge those convictions here.

This case centers around the reach and applicability of ORS 163.670 to Petitioner's conduct involving G. ORS 163.670 provides as follows:

> (1) A person commits the crime of using a child in a display of sexually explicit conduct if the person employs, authorizes, permits, compels or induces a child to participate or engage in sexually explicit conduct for any person to observe or to record in a visual recording.

> (2) Using a child in a display of sexually explicit conduct is a Class A felony.

The ORS 163.670 charges posed the greatest sentencing exposure in Petitioner's case. Pursuant to ORS 137.690, a person who has been convicted of more than one major felony sex crime (a category that includes ORS 163.670 convictions) is subject to a mandatory 300-month prison sentence. Because ORS 137.690 also provides that convictions from the same sentencing proceeding can be stacked upon each other if they arose out of different incidents, a person in Petitioner's position who is charged with five different counts of ORS 137.670 stemming from five different incidents will face a mandatory minimum 300-month sentence if he is convicted of at least two of those offenses. *See* ORS 137.690(c).

At the close of the State's case, defense counsel moved for judgment of acquittal as to the first ORS 163.670 charge (Count 1):

> Through my recollection and belief, I tried to keep this all straight, so my recollection may not be the best. But it seemed to me that the testimony that we have about that incident was that Mr.

Horseman was masturbating and that . . . he was finished masturbating before there was any display of sexually lewd conduct by [G]. Or that there was never a time where he wasn't actively engaged and touching [G] while he was having – while he was masturbating.

So this kind of gets into the jury instruction area I guess. The law albeit it is confusing, but I think there is a very important distinction that makes it so that every instance of sexual conduct between an adult and a minor doesn't become Unlawful Display of a Child in a Display of Sexually Explicit Conduct.

And that is that when you're engaged in a sexual act with the child, even though you may be watching and observing them, that that's not the crime. It's actually this crime where they're separate [] from this person and they're exhibiting lewd conduct or showing their privates or masturbation and you are also observing it.

And so I think the evidence from Count 1 is any time that [G] was exhibiting any masturbation or lewd conduct, Mr. Horseman was actually touching him at that point. So they're involved in a sexual act. And so I don't think under the definition it qualifies there. It does qualify as Sex Abuse in the Third Degree, but I don't think it qualifies as Using a Child in a Display of Sexual Conduct.

Respondent's Exhibit 112, pp. 140-41.

Counsel did, however, concede that because the other events showed that Petitioner was masturbating at the same time G was masturbating, a motion for judgment of acquittal was not warranted. *Id*. at 140. The trial court denied the motion because, with respect to Ground I, "there was mutual masturbation on that count." *Id*. at 143. The judge then clarified that he meant "that they were both masturbating contemporaneously – that not being touched, but just they both were masturbating at the same time." *Id.*

During defense counsel's closing argument, he asked the jury to hold Petitioner accountable for what he did, but only what he did, "Nothing more. Nothing less." Respondent's Exhibit 113, p. 18. He posed the issue this way:

Now, my client, Scott Horseman, is guilty of sexual abuse. I don't think there is any dispute about that. There's – there's no denying that. But what he's not guilty of is Using a Child in a Display of Sexual Conduct. And the reason why he's not guilty of that, I think you can see in kind of the contrast between the two [victims] in this case.

If you notice, Mr. Horseman was not charged with Using a Child in Display of Sexual Conduct against [T]. And the reason is obvious, because the law would not allow him to be charged with that. What we have is an incident where Mr. Horseman engaged in consensual conduct with [T]. It was illegal. It was immoral. But that's what it was. And he engaged in that. He – while participating, of course, observed and saw [T] doing it. But because they're engaged in this sexual act, it's not Using a Child in a Display of Sexual Conduct.

Now, as the Judge mentioned, you're going to get some very technical terms. And one of them is – describes what is – it is to observe someone in an act of sexual conduct. And what you'll hear is the observation does not apply to the incident or observation of these alleged sexual abuse counts.

So the observation doesn't apply to, you know, seeing what's going on and what you're involved in. And I think when you look at the facts of this case, you will see Mr. Horseman engaged in contact he shouldn't of with [G]. There was sexual abuse. He's guilty of that. I ask you to find him guilty of that.

*Id.* at 18-19.

Consistent with defense counsel's closing, when the trial judge instructed the jury, he specifically advised it as to the observation element of ORS 163.670. He instructed the jurors that "in this case, the observation does not apply to an incidental observation of any acts constituting any of the alleged sexual abuse counts." Respondent's Exhibit 113, p. 32.

The jury unanimously found Petitioner guilty on all counts. *Id.* at 42-43. At sentencing, Petitioner argued that the 300-month sentences associated with four of his five ORS 163.670 convictions were unconstitutionally disproportionate to the conduct at issue because the sentences for physically abusing G were far less than the exposure for observing him in a sexually explicit

display. The prosecutor disagreed and stated that "none of [the] hands-on sexual offenses would have occurred were it not for the defendant's inducement of [G] to engage in masturbation for him to view." Respondent's Exhibit 114, pp. 6-7. The prosecutor stated that Petitioner "would induce the child to engage in masturbation, and then that would allow the defendant to engage in the hands-on abuse of the child." *Id* at 7.

The trial judge ruled against the proportionality argument, but he also did not believe the conduct at issue warranted the imposition of a 300-month sentence. He stated, "if I was the god of the criminal justice system and could do just whatever I thought was right, I would not give him a 300-month sentence. I would give him a substantial sentence that was pretty significantly less." Respondent's Exhibit 114, p. 16. However, consistent with the State's recommendation, the presentence report's recommendation, and the statutory requirement, the judge proceeded to sentence Petitioner to concurrent terms totaling 300 months in prison.

Petitioner took a direct appeal wherein he raised nine claims that can be functionally reduced to two arguments: (1) his 300-month sentence violated proportionality principles of the Eighth Amendment and Oregon Constitution; and (2) the trial court erred when it denied his motion for judgment of acquittal on Count 1, and that it should have also entered judgment of acquittal on its own motion on the other ORS 163.670 charges reflected in Counts 3, 5, 7, and 9 due to insufficient evidence. In doing so, he acknowledged that he was presenting a new sufficiency of the evidence argument that was unpreserved for appellate review. Respondent's Exhibit 115, p. 35. The Oregon Court of Appeals affirmed the trial court's decision. In doing so, it ruled against Petitioner on the merits of his proportionality claims, and dismissed his claims pertaining to the sufficiency of the evidence without discussion other than to note that they were

unpreserved for appellate review. Respondent's Exhibit 118, p. 3 n. 2. The Oregon Supreme Court denied review. Respondent's Exhibit 120.

On August 30, 2019, Petitioner filed for post-conviction relief ("PCR") in Malheur County. Approximately four months later, the Oregon Court of Appeals issued its opinion in *State v. Clay,* 301 Or. App. 599 (2019), a case that this Court will explore more fully below. However, for purposes of this Background, the Oregon Court of Appeals concluded "that the legislature did not intend ORS 163.670 to capture a person's observation of his own sexual abuse of a child or observation of a child's sexual or intimate parts while sexually abusing or preparing to sexually abuse the child." *Id.* at 610.

On May 5, 2020, and with the assistance of appointed counsel, Petitioner filed his Amended PCR Petition wherein he presented two claims of ineffective assistance of trial counsel: (1) counsel failed to present a coherent defense; and (2) counsel erred when he conceded during closing argument that Petitioner was guilty of sexual abuse. Respondent's Exhibit 123, pp. 3-14. Although PCR counsel did not include any *Clay*-specific claims, his trial memorandum referenced *Clay* in support of Petitioner's first PCR claim concerning the alleged failure to present a cogent defense. Respondent's Exhibit 132, p. 25.

The State supplied the PCR court with a Declaration from trial counsel wherein counsel described Petitioner as "obstinate" and difficult to work with, with Petitioner describing for him "how he would fight with his two previous attorneys." Respondent's Exhibit 143, p. 1. Counsel stated that he was frustrated by Petitioner's refusal to accept a 60-month plea offer given that, by counsel's estimation, Petitioner faced a best-case scenario of 72 months in prison and a most likely result after trial of at least 300 months due to the multiple ORS 163.670 charges. *Id.* at 2. However, Petitioner was "adamant that the law was incorrect" and that he could not be convicted pursuant

to ORS 163.670 given the facts of his case because ORS 163.670 convictions were only permissible "if you created child pornography." *Id.* at 2.

Trial counsel went to unusual lengths to research the issue:

> I did extensive research on this, including going to the legislative archives in Salem to go through the minutes of the legislative history regarding the . . . statute. The legislative history was very bad for our defense. I found that the legislators had discussed in committee that they wanted the law to cover the situation in which Mr. Horseman was charged and drafted the statute accordingly. They specifically amended the original statute in committee to cover conduct such as Mr. Horseman's. I told Mr. Horseman about the legislative history and that the case law was clear that he could be charged with – and convicted of – [ORS 163.670]. Mr. Horseman was not interested in my legal analysis, and insisted that everyone, including the Oregon Court of Appeals was getting it wrong.

*Id*.

Throughout trial counsel's jail visits and during Petitioner's pre-sentence investigation interview, Petitioner continued to be "insistent that everyone, [counsel], the District Attorney, [the trial judge], and the Court of Appeals were wrong on the law and that the [ORS 163.670] charges should have been dismissed." *Id*. at 7. Indeed, when trial counsel told Petitioner he was sorry he had been sentenced to 300 months in prison, the last thing Petitioner said to him was, "'it's okay, it's going to get overturned on appeal.'" *Id*.

The PCR court denied relief on both claims. It found trial counsel to be credible, and Petitioner not to be credible. Respondent's Exhibit 145, p. 3. It concluded that Petitioner hamstrung his own defense because "Petitioner sabotaged [trial counsel's] efforts at every turn," alternated between telling counsel that the victims' statements were true, and at other times saying they were false, and that he also "refused to tell trial counsel before trial whether he would testify and, if so, what he would testify to." *Id*. at 4. The PCR court also directly addressed the potential applicability of the Oregon Court of Appeals' decision in *Clay* to the facts of Petitioner's case. "To the extent

petitioner relies on *State v. Clay* . . . it does not apply. The evidence was that Petitioner induced T and G to engage in sexual acts for him to watch."[1] Respondent's Exhibit 145.

Petitioner appealed from that decision and presented the Oregon Court of Appeals with both a counseled brief and a supplemental *pro se* brief. In the counseled brief, Petitioner argued that his trial attorney was ineffective when he, without consulting Petitioner, conceded his guilt as to certain charges during closing argument. The Oregon Court of Appeals issued a non-precedential opinion wherein it found the claim to lack merit because Petitioner had not established prejudice. Respondent's Exhibit 149.

In Petitioner's supplemental *pro se* brief, he argued that ORS 163.670 is unconstitutionally vague and overbroad as applied to his convictions for using G in a display of sexually explicit conduct. *See* Respondent's Exhibit 116. The Oregon Court of Appeals found the claim to be unpreserved for appellate review. *Id*. at 4. After finding this claim to be unpreserved, the appellate court also stated the following:

> To the extent that petitioner also means to claim that the trial evidence was legally insufficient to convict him of display—perhaps akin to arguing that criminal trial counsel was ineffective for failing to move for a judgment of acquittal on the display counts, or that criminal appellate counsel was ineffective for failing to pursue that issue on direct appeal—that claim also was not raised to the post-conviction court and so cannot be addressed on appeal. The case law has evolved since petitioner's criminal trial in a way that lends some support to his view of the display statute. *See, e.g., State v. Clay,* 301 Or. App. 599, 457 P.3d 330 (2019). However, petitioner's convictions are final at this point, and any available relief must be sought through post-conviction, using post-conviction procedures, and subject to the statutory limitations on post-conviction relief.

*Id*. at 5-6.

---

[1] It appears the PCR court mistakenly included T in this finding because Petitioner was not charged under ORS 163.670 with respect to his abuse of T. *See* Respondent's Exhibit 102.

Petitioner sought review in the Oregon Supreme Court, which denied review. Respondent's Exhibit 152. He also filed a successive and untimely PCR case raising multiple challenges involving ORS 163.670, but he voluntarily dismissed the action. Respondent's Exhibits 154-156.

On October 5, 2023, Petitioner filed this 28 U.S.C. § 2254 habeas corpus case. After Respondent filed the record, the Court reviewed those documents and found it in the interests of justice to appoint counsel to represent Petitioner. As a result, on August 12, 2024, it appointed the Public Defender's Office to represent Petitioner. Thereafter, Petitioner filed an Amended Petition for Writ of Habeas Corpus (#42) followed by a Second Amended Petition for Writ of Habeas Corpus (#43). In his Second Amended Petition, Petitioner raises three grounds for relief containing a total of six claims. In his briefing Petitioner pursues habeas relief on three of those claims: (1) the evidence was insufficient to support his convictions under ORS 163.670 as charged in Counts 1, 3, 7, and 9 (Ground I); (2) trial counsel was ineffective for failing to move for judgment of acquittal as to Counts 3, 5, 7, and 9, and he unreasonably conceded Petitioner was not entitled to acquittal on those counts (Ground III(C)); and (3) trial counsel was ineffective for failing to argue that ORS 163.670 violated constitutional prohibitions against vagueness and overbreadth under the Fifth and Fourteenth Amendments (Ground III(D)). He does not pursue the remainder of his claims. Memo in Support (#51), p. 14. n. 5.

Respondent asks the Court to deny relief on the Second Amended Petition because: (1) Petitioner has not carried his burden of proof for claims he has not addressed in his briefing; (2) Petitioner failed to fairly present Grounds I, III(C), and III(D) to Oregon's state courts, the claims are now procedurally defaulted, and Petitioner is unable to excuse his default; (3) to the extent Ground I is not procedurally defaulted, the state court decision denying relief is entitled to

deference; and (4) to the extent Petitioner is able to excuse his procedural default of Grounds III)C)

and III(D), the claims lack merit.

## DISCUSSION

### I.    Unargued Claims

Petitioner acknowledges in his briefing that he no longer pursues Grounds II, III(A), and

III(B). These claims are effectively withdrawn, and Respondent is correct that Petitioner has not

met his burden of proof on those claims. *See United States v. Sineneng-Smith,* 490 U.S. 371, 375-

76 (2020) ("[A]s a general rule, our system is designed around the premise that . . . [the parties]

are responsible for advancing the facts and argument entitling them to relief.") (internal quotation

omitted).

Respondent also maintains that Petitioner fails to directly address Ground I in any detail in

his brief, thus he has also not carried his burden on that claim as well. Ground I constitutes a

challenge to the sufficiency of the evidence to support the ORS 163.670 convictions. Petitioner

argues throughout his briefing (albeit primarily in the context of ineffective assistance of counsel

claims) that there was insufficient evidence in his case to justify those convictions. The Court

concludes that this argument is sufficient so as to avoid effectively waiving the claim.

### II.    Exhaustion and Procedural Default

Respondent asserts that Grounds I, III(C), and III(D) are not eligible for merits review

because Petitioner failed to fairly present those claims to Oregon's state courts for their

consideration. A habeas petitioner must exhaust his claims by fairly presenting them to the state's

highest court, either through a direct appeal or collateral proceedings, before a federal court will

consider the merits of those claims. *Rose v. Lundy*, 455 U.S. 509, 519 (1982). "As a general rule,

a petitioner satisfies the exhaustion requirement by fairly presenting the federal claim to the

appropriate state courts . . . in the manner required by the state courts, thereby 'affording the state courts a meaningful opportunity to consider allegations of legal error.'" *Casey v. Moore,* 386 F.3d 896, 915-916 (9th Cir. 2004) (quoting *Vasquez v. Hillery*, 474 U.S. 254, 257, (1986)).

If a habeas litigant failed to present his claims to the state courts in a procedural context in which the merits of the claims were actually considered, the claims have not been fairly presented to the state courts and are therefore not eligible for federal habeas corpus review. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000); *Castille v. Peoples*, 489 U.S. 346, 351 (1989). In this respect, a petitioner is deemed to have "procedurally defaulted" his claim if he failed to comply with a state procedural rule, or failed to raise the claim at the state level at all. *Carpenter*, 529 U.S. 446, 451 (2000); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). If a petitioner has procedurally defaulted a claim in state court, a federal court will not review the claim unless the petitioner shows "cause and prejudice" for the failure to present the constitutional issue to the state court, or makes a colorable showing of actual innocence. *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Sawyer v. Whitley*, 505 U.S. 333, 337 (1992); *Murray v. Carrier*, 477 U.S. 478, 485 (1986).

In this case, Petitioner alleges in Ground I that the evidence was insufficient to convict him of violating ORS 163.670 as to Counts 1, 3, 7, and 9. As recounted in the Background of this Opinion, Petitioner only sought a judgment of acquittal on this basis as to Count 1, not any of the other ORS 163.670 charges. On direct appeal, he not only changed the basis of his sufficiency of the evidence argument, but also sought relief as to Counts 3, 5, 7, and 9 in addition to Count 1. He conceded in his briefing that these claims were unpreserved, Respondent's Exhibit 115, p. 35. The Oregon Court of Appeals recognized the procedural failing and dismissed the claims without further discussion. Respondent's Exhibit 118, p. 3 n. 2. Because Petitioner raised his challenge in an improper procedural context, one in which the Oregon Court of Appeals did not consider the

merits of his claim, he did not fairly present Ground I. Because the time for presenting this claim on direct appeal passed long ago, the claim is now procedurally defaulted and Petitioner has not attempted to excuse the default.

Petitioner concedes that Ground III(C) is procedurally defaulted. Sur-reply (#67), p. 2. He also appears to concede that Ground III(D) is procedurally defaulted. Even if he does not concede the procedural default as to Ground III(D), the record establishes that he failed to include the claim in his Amended PCR Petition. *See* Respondent's Exhibit 123. Because he has no viable path by which to raise such a claim in a new state PCR proceeding, the claim is procedurally defaulted. However, Petitioner argues that he can excuse his default as to Grounds III(C) and III(D) because his PCR attorney was ineffective when he failed to raise these claims of ineffective assistance of trial counsel.

## III.   **Excusing Procedural Default**

A habeas petitioner seeking to overcome a procedural default through a showing of cause and prejudice must show that some external factor not attributable to him prevented him from complying with a state procedural rule, and that he suffered actual prejudice as a result. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *United States v. Frady*, 456 U.S. 152, 170 (1982). In *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court set forth the procedure by which a habeas corpus petitioner can show cause and prejudice to excuse a procedural default due to failings by a PCR attorney in omitting claims of ineffective assistance of trial counsel. In order to establish cause under *Martinez,* a petitioner must first show that his attorney in his initial-level PCR proceeding was ineffective under the standards the Supreme Court announced in *Strickland v. Washington*, 466 U.S. 668 (1984). *Id* at 14. In order to do so, Petitioner must first show that his attorney's performance fell below an objective standard of reasonableness. *Strickland* 466 U.S. at

686-87. Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance." *Id* at 689.

Second, Petitioner must show that counsel's performance resulted in prejudice. The appropriate test for prejudice is whether Petitioner can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id* at 694. In order to make the prejudice showing in the *Martinez* context, "a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez,* 566 U.S. at 14.

What, exactly, constitutes a "substantial" claim is somewhat amorphous. The Supreme Court likened the standard as similar to whether to grant a certificate of appealability in a habeas corpus case. *Id.* In order to secure a certificate of appealability, habeas petitioners must generally show that reasonable jurists might find the outcome debatable, or that the issues are strong enough "to deserve encouragement to proceed further." *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003). On the other hand, a claim is considered "insubstantial" if "it does not have any merit or . . . is wholly without factual support." *Id* at 15. "Notably, the standard for evaluating the underlying trial counsel IAC claim during the *Martinez* prejudice analysis is not as stringent as that required when considering the merits of the underlying claim." *Leeds v. Russell,* 75 F.4th 1009, 1017 (9th Cir. 2023) (citing *Michaels v. Davis,* 51 F.4th 904, 930 (9th Cir. 2022).

### A.    <u>Evidentiary Considerations</u>

As Exhibit A to his supporting memorandum, Petitioner offers a new Declaration in support of his effort to excuse his procedural default. With respect to the admission of new

evidence pertaining to a *Martinez* claim, "a federal habeas court may not conduct an evidentiary hearing or otherwise consider evidence beyond the state-court record based on ineffective assistance of state postconviction counsel." *Shinn v. Ramirez*, 142 S.Ct. 1718, 1734 (2022).

Petitioner nevertheless asserts in his supporting memorandum that he may still present new evidence for the purpose of determining wither the *Martinez* exception applies to an ineffective assistance of trial counsel claim that was defaulted in a state PCR proceeding. Memo in Support (#51, p. 17). However, in his Sur-Reply, he acknowledges that the Ninth Circuit forbids consideration of new evidence for any purpose in this context, including to show cause and prejudice to excuse a procedural default. *See* Sur-Reply (#67), p. 3. (citing *Hampton v. Shinn,* 143 F.4th 1047, 1077 (9th Cir. 2025); *see also McLaughlin v. Oliver,* 95 F.4th 1239, 1249 (9th Cir. 2024) (federal habeas courts cannot consider new evidence to assess cause and prejudice). Exhibit A will therefore not be considered.

### B.    Assessing the Viability of Ground III(C) for *Martinez* Purposes

As Ground III(C), Petitioner argues that his trial attorney was ineffective for failing to move for judgment of acquittal as to most of his ORS 163.670 convictions because there was insufficient evidence to support them. Petitioner claims that it was incumbent upon trial counsel to move for judgment of acquittal because a conviction under ORS 163.670 requires that the sexual abuse be for the purpose of observation or visual recording. He claims that not only was this made clear by the Oregon Court of Appeals in *Clay* in the years following his trial, but the evidence adduced at trial showed that each time G masturbated in Petitioner's presence, Petitioner also performed a sexual act on him. He asserts that aside from a singular piece of G's testimony that Petitioner looked at him "all the times" G masturbated, Respondent's Exhibit 112, p. 101, the record is devoid of evidence that he actually "observed" G masturbating. In determining whether

this is a "substantial" claim that PCR counsel should have raised, the Court begins its analysis by examining the Oregon Court of Appeals' decision in *Clay*.

In *Clay,* a man was charged with sexually abusing two of his girlfriend's granddaughters. He was also charged pursuant to ORS 163.670 under the theory that he observed them while he was sexually abusing them. The evidence showed that the defendant saw the girls' genitalia either as he was physically touching the girls, or immediately before he made contact with the girls. He moved for judgment of acquittal on the basis that he could not be convicted under ORS 163.670 for simply observing his own sexual abuse of the minors. The State argued just the opposite, *i.e.*, that observing a child in the course of sexually abusing that child is, indeed, punishable under ORS 163.670. The trial court denied the motion for judgment of acquittal, and the Oregon Court of Appeals reversed.

The Oregon Court of Appeals looked to the legislative history to provide insight into what it meant to satisfy the "observation" portion of the statute. It found it "apparent from the text and legislative history of ORS 163.670 that an audience of one is sufficient." *Id.* at 607. It also concluded that "[t]he legislature chose the phrase 'any person' intentionally. The original draft of what would become ORS 163.670 said 'for *another* person to observe or to record in a visual recording.'" *Id.* at 608 (italics original to *Clay* opinion). The Oregon Legislature intentionally deviated from this language to allow for the conviction of a defendant who causes a child to engage in sexually explicit conduct for the defendant to observe. The appellate court was concerned, however, with criminalizing a defendant's observation of sexual abuse he is already committing such that the observation is simply incidental to the crime already being committed. *Id.* at 610. As it stated, it would otherwise be difficult to avoid ORS 163.670 liability while abusing a child "unless the sexual abuser closes his eyes or otherwise avoids seeing what he is doing[.]" *Id.*

Applying those principles to the facts of *Clay,* it found that "the only evidence was that defendant observed the victims' genitalia in direct connection with his own sexual abuse of the victims" because "in each instance, defendant had either already made sexual contact with the victim before looking at her vagina or made sexual contact with the victim at the same time as or immediately after looking at her vagina." *Id.* at 612. It further reasoned that "the viewing was so closely intertwined with the touching that no reasonable juror could find that the viewing was other than incidental to defendant's criminal sexual abuse." *Id.* Importantly, the Oregon Court of Appeals provided the following:

> In cases involving a person's sexual abuse of a child, we acknowledge that it is difficult to articulate a precise standard as to when evidence of "observation" that occurred during a sexual-abuse episode will be legally sufficient for a display to count to survive a motion for judgment for acquittal. Neither party has articulated a standard that we find satisfactory. Ultimately, the question is whether, on the record that exists, a reasonable juror could find that the defendant caused the child to participate or engage in sexually explicit conduct *for* the defendant to observe, as opposed to the observation being incidental to the defendant's sexual abuse. **In most cases, the defendant's purpose will be a question for the factfinder.**

*Id.* at n. 8 (italics in original, bold added).

According to Petitioner, each time G masturbated in his presence, Petitioner also performed a sexual act on him, bringing him within the incidental conduct that *Clay* removes from the realm of criminal culpability. He further states that the State did not present evidence that the crime was committed for the purpose of observation, and that the sole piece of evidence that Petitioner observed G masturbate was one small portion of the record where G testified that Petitioner watched him on one occasion and "all the times." Respondent's Exhibit 112, p. 101. He contends that all of the evidence suggested Petitioner's primary purpose in inducing G to masturbate was to

entice him into a later sex act that involved something other than Petitioner watching. He stresses that the State failed to present evidence that the crime was committed for the purpose of observation. There are several problems with Petitioner's argument.

The Court begins by examining the evidence adduced at trial. In doing so, it views the record in the light most favorable to the prosecution. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The record reveals that the State presented evidence of observation for each of the five counts of violating ORS 163.670, not just one isolated piece of testimony. As to the first event, G testified that he and Petitioner went back behind a business and Petitioner said, "Let's jack off." Respondent's Exhibit 112, p. 86. Petitioner pulled out his penis and began to masturbate and, according to G, "And then I took out my penis, too, and he was like jacking off while looking at me. And then he – he watched me like jack off too." *Id.* at 85. The prosecutor asked G, "you also said that you pulled your penis out and he was watching you?" *Id. at* 86. G responded, "Yes. That's exactly right." *Id.* When the prosecutor followed up by again asking, "when you pulled out your penis and he was watching you, were you also masturbating?" Petitioner responded in the affirmative *Id*.

The second of the five incidents underlying the ORS 163.670 charges took place in an abandoned car lot. G testified that  he and Petitioner drank four alcoholic beverages, then Petitioner ""pulled out his penis first and started masturbating." *Id.* at 90. He then had G take out his penis and start masturbating, and that Petitioner started watching him. *Id.*

The third incident occurred in the bathroom of a fast food restaurant. Petitioner said, "Let's like go to the bathroom and like do something." *Id.* at 93. At trial, after G had provided a brief description of what had taken place, the prosecutor asked, "Was there any time in which he had

you touch your penis or masturbate or touch your penis while he watched?" *Id*. at 95. G responded, "Yeah. Sorry. I left it out. Yeah. He had me do it, too. Yeah." *Id.*

The fourth incident took place in a courtyard. G testified that once they reached the courtyard, Petitioner "pulled down his pants again and started masturbating. He had me pull down mine. And I started." *Id*. at 99. The prosecutor asked G, "Did Mr. Horseman ever look at you while you were masturbating that time?" *Id.* at 101. Petitioner replied, "Oh, yeah, he did. Yeah." *Id.* He also stated, "He looked all the times. Yeah." *Id.*

The fifth and final incident underlying the ORS 163.670 charges took place in the bathroom of a grocery store. G testified that what transpired was "just the usual. He like pulled out like his and started masturbating and he asked me to do it, to pull out mine. . . ." *Id.* at 108. The prosecutor posed the following: "So I want to be clear that he had pulled out his penis and started masturbating. You exposed your penis and started masturbating. And was he watching you when you were masturbating?" *Id*. G replied in the affirmative. *Id.*

The foregoing testimony makes it clear that Petitioner induced G to masturbate, and the prosecutor specifically asked G whether Petitioner was watching him masturbate with respect to each of the five incidents charged. G always responded in the affirmative. Viewing the evidence in the light most favorable to the prosecution, one could conclude that Petitioner's observation of G masturbating after Petitioner induced him to do so was not merely incidental viewing of Petitioner's hand's-on abuse of the boy. Instead, it "was an end in itself, even if it was not the only end." *Zamora* 326 Or. App. 140, 147 (2023).

It is also important to recognize that the Oregon Court of Appeals decided *Clay* more than five years after Petitioner's criminal trial. "*Strickland* does not mandate prescience, only objectively reasonable advice under prevailing professional norms." *Sophanthavong v. Palmateer*,

378 F.3d 859, 870 (9th Cir. 2004) (citing *Strickland*, 466 U.S. at 690); *see also Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994) (lawyers not required to anticipate decisions, and conduct must be evaluated at the time of that conduct). Petitioner nevertheless contends that it was logical and foreseeable that Oregon courts would, at some point, make a distinction between incidental observation as opposed to when observation was distinct from any sexual abuse that takes place. Although Petitioner asserts that the result in *Clay* was foreseeable, it was not established law at the time of Petitioner's trial, and trial counsel did not have the benefit of the decision when structuring his defense. Even if this were not dispositive of the issue, however, Petitioner's reliance on *Clay* to demonstrate trial counsel's substandard representation is misplaced because even *Clay* does not establish that the conduct with which Petitioner was charged fell outside the scope of ORS 163.670.

The PCR court addressed this issue directly and specifically stated that *Clay* did not apply to Petitioner's case because the evidence showed that Petitioner induced G to engage in sexual acts for him to watch. Respondent's Exhibit 145, p. 5. Petitioner disagrees with this conclusion, but state court determinations on matters of state law are binding on a federal habeas court, even one conducting a *de novo* review. *See, e.g., Miller v. Baldwin*, 723 F. App'x 408, 410 (9th Cir. 2018); *Bredermeier v. Phillips*, 786 F.Supp.3d 1300, 1321 (C.D. Cal. June 16, 2025) (WL 1689306); *Allen v. Montgomery,* 2020 WL 5887015, *12 (C.D. Cal. July 28, 2020).

The Oregon Court of Appeals, citing *Clay,* did allude to the fact that the case law had "evolved" in the years after Petitioners trial, and that changes in the case law lent "some support" to his view of ORS 163.670. Respondent's Exhibit 149 at 5-6. It did not, however, state that his <u>claim</u> had, or even appeared to have, merit. Indeed, unlike the PCR court, the Oregon Court of

Appeals did not decide the issue. The record therefore leaves this Court with one binding state court interpretation of state law that clearly concludes that *Clay* is not helpful to Petitioner.

Even if this Court were not bound by the PCR court's determination, *Clay* addressed conduct that was incidental to the sexual abuse of the minor victims. That is not the case here where the evidence, viewed in the light most favorable to the prosecution, showed that Petitioner induced G to masturbate, and observed him masturbate on each of the five occasions charged. A motion for judgment of acquittal in this situation was unlikely. As the Oregon Court of Appeals later recognized in *Clay,* "the defendant's purpose will be a question for the factfinder," which is precisely what happened in Petitioner's case. *Clay,* 301 Or. App. at 612 n. 8.

Trial counsel's view of the issue was in line with the later holding in *Clay*, and he specifically argued to the jury that it could not convict Petitioner of observation incident to the hands-on sex abuse crimes. This argument was supported by the trial judge's instruction to the jury that "the observation does not apply to an incidental observation of any acts constituting any of the alleged sexual abuse counts." Respondent's Exhibit 113, p. 32. The jurors presumably adhered to this important instruction because "[a] jury is presumed to follow its instructions." *Weeks v. Angelone,* 528 U.S. 225, 234 (2000) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)).

In light of the foregoing, the Court does not find that trial counsel's performance fell below an objective standard of reasonableness when he did not file a motion for judgment of acquittal as to Counts 3, 5, 7, and 9,  such a motion was unlikely to succeed given the evidence the prosecution introduced at trial. For all of these reasons, this Court does not find Petitioner's Ground III(C) claim to be substantial for purposes of *Martinez*, thus PCR counsel did not act unreasonably when he omitted the claim from the Amended PCR Petition. Petitioner is therefore unable to excuse his

procedural default. Even if the default had been excused, and even upon a *de novo* review, the Court would not find Ground III(C) to be meritorious because the analysis would simply involve a stricter application of the *Strickland* standards. *See Leeds*, 75 F.4[th] at 1018.

### C.    *Martinez* Analysis for Ground III(D)

As his final claim, Petitioner argues that his trial attorney unreasonably failed to argue that ORS 163.670 violated the Fifth Amendment prohibitions against vagueness and overbreadth in an as-applied challenge. "A [substantive criminal] statute can be impermissibly vague . . . if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or "if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado,* 530 U.S. 703, 732 (2000). "[V]agueness challenges to statutes which do not involve First Amendment freedoms must be examined in light of the facts of the case at hand." *United States v. Mazurie,* 419 U.S. 544, 550 (1975).

Petitioner states that the same reasoning applies from Ground III(C) to his Ground III(D) claim. He claims that, as a criminal defendant tried prior to *Clay,* he was prosecuted for conduct that was merely incidental to sexual abuse. According to Petitioner, had trial counsel raised a Fifth Amendment challenge to ORS 163.670 and argued that the statute was vague and overbroad as applied to his client's conduct, the result of his trial would have been different.

As discussed above, he did not face a version of ORS 163.670 that allowed for his conviction for observation merely incidental to sexual abuse. Instead, the prosecution elicited evidence of observation for each of the five display incidents charged in the Indictment. In addition, even though Petitioner's trial preceded *Clay* by more than five years, counsel argued that Petitioner could not be convicted of observation incidental to hands-on abuse, and the judge specifically instructed the jury that it could not find him guilty under ORS 163.670 with respect to

any incidental observation of his sexual abuse of G. Respondent's Exhibit 113, p. 32. Under the circumstances of Petitioner's case, trial counsel was not obligated to raise a Fifth Amendment challenge to ORS 163.670. As such, Ground III(D) is not substantial for purposes of *Martinez*, and PCR counsel did not perform unreasonably by not raising it. Accordingly, the procedural default is not excused. As with Ground III(C), even if the default were excused, Petitioner would not be entitled to habeas corpus relief because he could not make the elevated showing required of a merits determination of the issue.

## **CONCLUSION**

For the reasons identified above, the Second Amended Petition for Writ of Habeas Corpus (#43) is denied. The Court does, however, issue a Certificate of Appealability limited to the following issues: (1) whether Petitioner has excused his procedural default of Grounds III(C) and (D); and (2) if he has excused the default, whether he has made a sufficient showing on the merits to warrant habeas corpus relief.

IT IS SO ORDERED.

February 9, 2026
        DATE

Marco A. Hernandez
United States District Judge

23 – OPINION AND ORDER